LAW OFFICE OF RICHARD D.
GRANVOLD, P.S.
31620 23RD AVE SO STE 205
FEDERAL WAY WA 98003-5049
(253) 945-6062

HON. SAMUEL J STEINER
Chapter: 7
Trial Date: 4-18-06
Time: 9:30 AM

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

| | | |
|---|---|---|
| DONALD WESLEY BRITTIAN | ) | Plaintiff's Trial Brief |
| Debtor, | ) | Case NO. 05-23328-SJS |
| | ) | |
| DONALD WESLEY BRITTIAN | ) | |
| Plaintiff, | ) | ADV. 05-01398-SJS |
| v. | ) | |
| ECMC, TERI, et al. | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW Plaintiffs by and through the undersigned attorney, and files this Trial Brief in this matter. The issue before the court is whether the educational loans are dischargeable under 11 U.S.C. 523(a)(8). The facts are set forth below.

In light of the **Nys decision from our** 9th Circuit BAP and the many court decisions cited around the country approving of the **Nys** decision, this brief includes the recent guidelines set forth in that case that this debtor is dependant on. If this court does not apply the law but simply concludes a degree means no discharge, the debtor has no leg to stand on at the trial level in this case. Your honor is respectfully requested to find undue hardship and if the court finds that some income can be paid, to use its equitable powers to impose monthly payments for a period of time pursuant to the **Saxman** case cited herein.

Simply stated, the court will query: how will this debtor **ever** payoff his student loans...ever..The answer is without discharging all

Plaintiff's Trial Brief Pg 1

or a portion he never will..!

Only two defendants remain: TERI and ECMC. Defendant Michigan Guaranty Agency (MGA) and Plaintiff filed a partial discharge of all of defendant MGA's debt of almost $12,000 except for $2,000 as set forth in the stipulated judgment filed for court approval on April 13, 2006. All other defendants were defaulted by court order March 6, 2006. Thus, only defendants TERI and ECMC will appear at trial.

## I. FACTS [1]

The following facts are stipulated as set forth herein. **<u>Brittian owes $197,497 to these remaining defendants including the $2,000 owed to MGA. Interest alone totals $875.64 (ECMC, $358.06 TERI $358.07 , $7.50 MGA) on this debt monthly!</u>** The monthly payments totals $1,163.23(ECMC $724.32, TERI $403.90 MGA $35.00; such payments are based on a 30 year plan with ECMC and a 21 year plan with TERI. Principal all defendants: $197,497.

Interest monthly all defendants: $875.64

Payments monthly all defendants: $1,163.23 (this leaves $287.59 monthly to apply to the balance of $197,497.

1. **<u>Procedurally: Default Judgment Against Other Defendants:</u>** The Plaintiff owed to other defendants other than ECMC, TERI, and MGA on student loans which were defaulted by court order herein dated March 6, 2006. (Exhibit 14) totaling $126,335.54 (PTO, pg. 7).

2. **Debts owed to non-defaulted defendants:** Defendant MGA's debt owed is $2,000.00 [2].

---

[1] Some facts will be filed in a Joint Pretrial Order (PTO) expected to be filed today. References will be made to PTO where appropriate or to the Exhibits (Ex.).

[2] A stipulated judgment was filed April 13, 2006 with the court herein for approval but signed by both parties; said

ECMC is owed $156,159.73 with interest at 4% per annum and $16.89 per diem. PTO pg 3. TERI is owed $39,312.87 as of March 29, 2006 with interest at 10.93% . PTO pg. 4. Thus, monthly interest of $358.07 is owed to TERI.. Finally, MGA is owed $2,000 with interest at 4.5% per annum which equals $7.50 monthly and is payable at $35.00 to prevent enforcement of the judgment.

    3. **Present Income and expenses:** The Plaintiff's net income totals $2,765.27 . Ex. 1 is his March 2006 paycheck showing the deductions per paycheck. The legal obligation to pay child support of $102.36 will terminate July 2006 when his daughter turns 18 ( PTO pg 8)  raising the net income to $2,867.63. His daughter Nichole Brittian lives in Mokena Illinois with her mother. The school contract was for $39,994 for the 2005-6 school year at Auburn School District in Auburn Washington. (Ex. 5).

    Mr. Brittian's expenses presently total $3,081.50 as set forth Schedule J. Exhibit 2.. As noted in that exhibit his estimated rental amount is $900.00 when he moves out of his current residence. The $3081.50 does not include vacations, extra monies to see his daughter other than the $65.00 listed when his child support was $552.45 monthly which prevented him from being able to travel more to see her.

    Schedule J also includes $250 in monthly payments owed on past IRS nondischargeable income taxes owed of approximately $12,000.00 . In addition, Brittian expects to owe income taxes for 2006 and said tax information was being presented to tax preparer on April 12, 2006 and not yet completed. Although the debtors just like all the other debtors as well as bankruptcy judges and attorneys do not know exactly what they spend in food and clothes every month or year, the schedule includes what they estimate would be reasonable expenses as directed by the bankruptcy schedule rule noted at the top of that schedule for food of  $350 a monthly. Only $10.00 is listed for clothes and shoes as Brittian has no more monies to pay for such even though needed; a reasonable and necessary expense would more likely total $75.00 monthly or $900.00 per year. Home maintenance of $5  is also low but no monies to increase. Thus, pots, pans, mattresses, bed sheets, dressers, brooms, skillets, plates, couches, home

---

```
stipulation reflects the amount of $2,000 owed at 4.5% interest
rate payable at $35.00 per month commencing May 1, 2006; the
remainder of the debt is discharged pursuant to that stipulation.
      Plaintiff's Trial Brief Pg 3
```

furnishings etc. of $50 to $75.00 would be a normal minimal amount of monies to expend but no monies available to do so. Finally, Brittian would travel 6 or more times a year to see his daughter he loves if he had the money to do so..but the schedule only includes merely for 2 trips a year.

**4. Education...Future Advancement:** Brittian has a specialized degree useful only to be employed as a school psychologist. His degree is thus specialized. As a result of having obtained his Ed.S. degree several years ago which entitled him to be paid at the level of his Ed.S. degree. Brittian **had up to 5 years to take his final comprehensive examination which he completed in December 2005 and hence his "degree date" in December 2005. Brittian has though been out of school practicing now for going on six years now having attended part time class several years ago.** As a school psychologist, Brittian's income is governed by the state which puts out a schedule every year . Under that scale, Brittian's income in 5 years on the present scale will increase $4,200.00 gross per year or $350.00 monthly gross before taxes which not enough net income to pay his student loans.

Brittian expected to be earning $80,000 a year in income but the income substantially decreased to 50% in many areas of the country resulting in Brittian coming to Washington which is one of the higher paying states in the nation. As a result of the decrease in salary, Brittian used deferments and forebearances where he could, making payments when he could on student loan debts that were presently due and owing to stop garnishments. However, as a result of the new debts with ECMC, TERI and MGA becoming due, Brittian could no longer afford all the payments on all those debts and live!

**5. Medical Problems:** Brittian has a partially blind right eye having had a corneal transplant and glaucoma. That problem does not affect his ability to work in his current profession. However, he does have medical expenses incurred as a result of such problem. Medical insurance covers some of the expenses related but debtor has out of pocket expenses also.

**6. Likelihood that the Current State of Affairs will Persist:** Brittian's state of affairs will not persist . The income increase based on years of work Brittian is governed by simply fails to increase any significant amount with respect and in light of the massive student loan debt owed.

The State of Washington sets the pay scale for his type of work ( School Psychologist). Mr.

Brittians' present income is by a contract which expires shortly in several months with the Auburn School District. Brittian expects to be reemployed with Auburn School District and signed an intent letter in March 2006 and provided to that district. His income will increase gross $407 more per year or $33.92 monthly gross .

Brittian earned $62,007 for the 2004 tax year and had business income of $7,754 that year. Brittian worked for Cumberland in both 2003 and 2004 as that covered a full school year. As a result, in 2004, Brittian worked at in Logansport Indiana School District. In addition , Brittian worked at Kent School District also through a Cumberland contract. **In addition Brittian was able to pickup an extra job with Kent School District** as a school psychologist which paid him an extra $3,375.00 a month for 10 months or $33,750 . That year was an anomoly as that district had a severe shortage of psychologists and Brittian volunteered and worked an extra 25 hours a week to earn those extra monies. Since then, no such opportunities have ever been known of since..it was simply a lucky fluke! As a result of those monies earned, Brittian knew he would be short on income for the following year as the district mandated income was not one Brittian could live on and still pay child support, and this student loan debts. Thus, he saved his moneys as evidenced in PTO for January to October 2005 year so he would have monies to pay for rent, food, etc when he no longer had that extra income.

No other contracts through Cumberland or other companies were available for Brittian to earn extra monies and still are not available.

Brittian knew he had to file bankruptcy as a result of the remaining student loan debts falling due along with his other debts. If he paid the monies in the bank to his student loan creditors, Brittian would not have the monies to live on that he needed, and a trustee in bankruptcy could sue those creditors anyway to get it back as a preference. To protect himself, he in fact prepaid his lease for future rent as much as he could so that he would be able to have somewhere to live, not have to move, and in case his daughte came up to Washington to visit instead of him going to Illinois.

Brittian was able previously to enter a contract through Cumberland Therapy Services; those contracts have dried up for this area. Washington State is one of the highest paying states for his type of

employment. .

**7. Assets:** Brittian owns assets with a value of less than $4,000 and a vehicle with little or no equity in it.    Brittian have no assets to sell to payoff the loans: he owns no land or a home.

**8. Good Faith Facts; Brittian has made good faith payments when he could:**

Brittian has paid on his other student loan debts when he was able to do so. He was worked when he could extra jobs such as the 2004 year in which the extra job fell in his lap. Brittian has paid over $4000 on the student loan debts owed to others which debts were not deferred or in forebearance when he was able to do so.

## II. LAW

**Student loans are excepted from discharge pursuant to 11 U.S.C. 523(a)(8).**

_____As set forth herein, the only real issue is whether or not excepting such debt from discharge will impose an undue hardship on the debtor.

### Undue Hardship:

Under the law, in order to prove a debt is dischargeable pursuant to 11 U.S.C. 523(a)(8), the plaintiff must establish the elements set forth below.

**"Student loans" are excepted from discharge pursuant to 11 U.S.C. 523(a)(8) only if the debtor sues in bankruptcy court and establishes an "undue hardship".** Thus, government-funded or guaranteed student loans are nondischargeable "unless excepting such debt from discharge ...will impose an undue hardship on the debtor and debtor's dependants[.]

_____The only real issue before this court is whether or not excepting such debt from discharge will impose an undue hardship on the debtor.

Plaintiff's Trial Brief Pg 6

**Burden of Proof**: The debtor has the burden of proving that repayment of the debt will impose an undue hardship. [3]

**Discharging loans separately:** The court can find a loan partially dischargeable. If a debtor has the ability to pay a portion of the debt, the court may but is not required to use its equitable authority under Section 105(a) to grant a partial discharge. [4]

**Definition of "Undue Hardship" and tests to determine:**

The term "undue hardship" is not defined in the Bankruptcy Code and must be determined based on the facts and circumstances of each case. [5] However, the 9th Circuit Court of Appeals has adopted the "*Brunner*" test to determine whether a student loan is dischargeable as an undue hardship. [6] The *Brunner* test has three parts which the court must consider before deciding whether to except a student loan from discharge. The Debtor bears the burden of proving all of the following three parts:

(1) that [s]he cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependants if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the

---

[3] In Re Raymond, 169 B.R. 67, 69 (Bkrtcy.W.D.Wash. 1994).

[4] See **In re Saxman,** 325 F.3rd 1168, at 1175 (9th Cir. 2003).

[5] In RE Hinkle, 200 B.R. 690 (Bnkrptcy.W.D.Wash. 1996).

[6] In Re Pena, 155 F.3rd 1108, 1112 (9th Cir. 1998); In Re Fuller 241 B.R. 440,444 (9th Cir. BAP 1999); In Re Nascimento, 241 B.R. 440, 445 (9th Cir. BAP 1999).

loans. [7]

## 1. Test #1: Minimal Standard of Living:

The first prong of the Brunner test requires an examination of the Debtor's current income and expenses to see if payment of the student loan would cause the family's standard of living to fall below that minimally necessary. [8]

Test #1: minimum standard of living: the first element requires an examination of the debtors current financial condition to determine whether repayment would cause his standard of living to fall below a reasonable level. Abject poverty is not the standard. [9] The court uses its own discretion to determine whether the debtor's budget contains unnecessary or unreasonably high expenses.

The method for calculating a debtor's average monthly expenses is a matter properly left to the discretion of the bankruptcy court. [10] Although the Brunner test looks to the debtor's current income and expenses, where the evidence suggests that the debtor's income or expenses tend to fluctuate, it is not inappropriate to average figures over a reasonable period of time. [11]

---

[7] In re Pena , 155 F.3d at 111; In Re Naschimento, 241 B.R. 440, 445 (9th Cir. BAP 1999).

[8] In re Birrane, 287 B.R. at 495.

[9] In Re Hinkle, 200 B.R. at 693.

[10] See In re Nascimento, 241 B.R. at 446; see also O'Hearn V ECMC (In re O'Hearn), 339 F.3rd 559, 564-65 (7th Cir. 2003), citing In re Pena, 155 F.3d at 1114 ("[W]e must give deference to the bankruptcy court's findings of adjudicative face and to the factual inferences that the court drew from those facts as long as those findings are ground [sic] in the evidence of record.").

[11] In re Pena, 155 F.3rd at 1112.

Plaintiff's Trial Brief Pg 8

This first test or prong is met if the court finds that the debtor demonstrates that they could not maintain a minimal standard of living without undue hardship based on Debtor's current income and expenses, considering all of the evidence relating to the current income and expenses, as well as evidence concerning steps that Debtors have taken to minimize their expenditures and evidence of unmet medical and dental needs or other reasonable unmet needs.

Entertainment is a reasonable expense. Under the minimal standard of living test, people must have the ability to pay for some small diversion or source of recreation, even it is just watching television or keeping a pet. **IN Re McLaney** 314 B.R. 228, 234 (Bkrtcy. M.D.Ala 2004).

**Application of Test #1:** Debtors' average net monthly income totals $2,765.27 does not allow Brittian money to pay all his estimated normal monthly living expenses which total $3,081.50 It is only because he prepaid his rent that he is able to make it. [12] Those expenses exclude ANY student loan payments which total monthly of $1,163. Thus, the debtor cannot afford to pay the monthly payment of on these student loans while having money to pay his normal and reasonable living expenses.

The monthly payment of $250 for IRS for taxes owed exceeding $12,000.00 and taxes owed of of unknown amount for 2005 are not temporary as they will last some time; assuming interest of 12% a year

---

[12] ECMC's contention that rent should not be included is a red herring. For example, if a person paid rent on April 1, and April 2 they had trial one could argue that they had no rent to pay on day of trial. But this is irrational. Brittian will have rental expenses shortly he estimates at $900.00

or $120.00 a month, and then unknown monthly penalties means those debts in fact will not be paid for many years or so as the principal is hardly being reduced at all!

Personal expenses listed in Schedule J of $40 are the non-food personal items of soap, shampoo, deodorant, toiletries, toothbrushes, toothpaste, Kleenex, shaving items, dish soap, items under kitchen and bathroom sinks, house and car cleaners, etc. i.e. non-edible items that all persons reasonably and necessarily buy. For a 1 person family budget of $40.00, that amount is reasonable and necessary and actual. It is unknown what the defendants say can be trimmed as their brief has not been filed or served and they fail to answer that question in the discovery filed as exhibits! As such it will be addressed at trial.

The court also has the duty to recognize other expenses: clothing, vacation, entertainment to be able to meet another person to have a personal life, etc. Brittian washes his dry clean clothes at home to save money, cannot afford presently more clothes but needs them on a yearly basis if income is there, etc. 6 trips a year to visit his daughter cost money: airflights, food, room and board.

However, the court is reminded $875.64 in interest alone is accruing each month on the debt. Thus, even if the court found that Brittian could afford any monies , let alone up to $875.64 , the Test #1 is met and established without doubt.

## 2. Test #2: Likelihood That The Current State of Affairs Will Persist.

The "additional circumstances" prong of the <u>Brunner</u> test requires

that Debtors show that additional circumstances exist indicating that the current state of affairs is likely to persist for a significant portion of the loan repayment period. [13] Stated otherwise, Debtor's must demonstrate that the "road to recovery is obstructed by the type of barrier that would lead [the court] to believe he will lack the ability to repay for several years". [14]

In a recent BAP opinion, **Nys v. Educ. Credit Mgmt. Corp. (In re Nys)**, 308 B.R. 436, 446-47 (9th Cir. BAP 2004),[15] the court held that "additional circumstances" include a broad range of facts, not just dire or catastrophic circumstances. Stated in the affirmative, this part of the <u>Brunner</u> test considers whether there is a likelihood that the debtor's financial situation will improve sufficiently to permit the debtor to repay the loans. [16] The <u>Nys</u> court expressly rejected ECMC's contention that a debtor must prove "exceptional circumstances such as serious illness, psychiatric problems, disability of a dependant, or *something* which makes the debtor's circumstances more

---

[13] <u>Rifino v. United States of America (In re Rifino),</u> 245 F.3rd 1083, 1088-1089 (9th Cir. 2001) (citations omitted).

[14] <u>Birrane,</u> 287 B.R. at 496, <u>citing</u> <u>In re Roberson,</u> 999 F.2d 1132, 1137 (7th Cir. 1993).

[15] The Nys decision has been followed in many courts now, including **ECMC v Mason** 315 BR 554, 561-2 (B.A.P. 9TH Cir. 2004; Judge Brandt in which $100,000 owed, partial discharge upholding and approving of **Nys; Pa Higher Educ. Assistance Agency v Hedlund**, 2004 BR Lexis 1295 (B.A.P. 9th Cir. August 6, 2004); **Twitchell v ECMC** 2004 BR Lexis 2377 Bankr.D.Idaho May 19, 2004); **Rutherford v. William D Ford Direct Loan Program** 317 B.R. 865, Bankr.N.D.Ala. 2004); **Doe v. ECMC** 323 B.R. 111, (Bankr.S.D.N.Y. 2005); **Kenny v N.J. Higher Educ. Assistance Auth.** 313 B.R. 100, 106 (Bankr.N.D.N.Y. 2004); etc.

[16] <u>In re Nys</u>, 308 B.R. at 442.

compelling than those of an ordinary person in debt".

There are two elements to the second prong. The first is whether the debtor's financial difficulties are "likely" to continue.

> "Under this standard, a debtor must establish by a preponderance of the evidence that the debtor's financial situation is not likely to improve; the debtor is not required to prove with certainty that the financial situation will not improve. The court's judgment on this question necessarily must be based on a consideration of the debtor's education, work history, health and other relevant circumstances". [17]

The second element of the second prong is that the financial difficulties must be likely to persist for a significant portion of the repayment period. [18]

The "additional circumstances" are not defined solely by their nature or by a convenient label, but instead by their effect on the debtor's "continuing inability to repay over an extended period of time". [19] Therefore, the difference between "garden variety hardship and dis-chargeable student loan debt is simply that the latter requires a showing of circumstances enabling the court to predict the longevity of the financial hardship on a case-by-case basis. [20]

The Ninth Circuit has not presented an exhaustive listing of what "additional circumstances" must be present in order to justify an undue hardship finding. However, the 9th Circuit did find the second

---

[17] Id at 442 citing **4 Collier on Bankruptcy** Section 523.14[2], at 523-100 (Alan R. Resnick and Henry J. Sommers eds., 15th ed. rev. 2003).

[18] Id.

[19] In Re Nys, 308 B.R. at 443; (citing Brunner, 831 F.2d at 396).

[20] Id.

element of <u>Brunner</u> test was indistinct from the Sixth Circuit's corresponding element, which required a finding that "there is no indication that [the debtor's] financial situation will improve in the foreseeable future". [21]

**"Additional" does not mean "exceptional"!** The second prong requirement of "additional circumstances" does not require "exceptional circumstances" such as "serious illness, psychiatric problems, disability of a dependant, or something which makes the debtors' circumstances more compelling than those of an ordinary person in debt". [22]

### Definition of "Additional":

The <u>Nys</u> court defined the term "additional":

Additional circumstances are any circumstances, beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period. The circumstances need be "exceptional" only in the sense that they demonstrate insurmountable barriers to the debtor's financial recovery and ability to pay. The court may consider any number of circumstances that relate to future ability to pay. Depending on the case, the debtor's age, training, physical and mental health, education, assets, ability to obtain a higher paying job or reduce expenses, and other factors not listed here may be relevant. The test is, by its nature, case-by-case. 308 B.R. at 444.
....
....
...The mere fact that a debtor earns above the poverty level is not itself a basis for finding that there are no additional circumstances showing that the inability to pay will persist.
....
.... The..test does not focus on a debtor's past choices, but on currently existing circumstances, and what those circumstances show with regard to the debtor's future

---

[21] <u>Pena,</u> 155 F.3rd at 1112 n.4.

[22] <u>In Re Nys,</u> 308 B.R. at 444.

financial situation. Debtor was granted loans and deferments by the government, presumably under the government's standards. There is no basis under ***Brunner*** for punishing Debtor for taking advantage of the programs the government offered. 308 B.R. at 446

"Additional circumstances" under the second prong must be **"indicia of a debtor's inability to repay the loan in the future. Such circumstances need not be "exceptional", except in the sense that they are tenacious and demonstrate insurmountable barriers to the debtor's financial recovery and ability to pay for a significant portion of the repayment period. This approach gives the courts the appropriate flexibility to do justice in each unique case".** [23]

The Nys court identified the following non-exhaustive list of factors with respect to this second element:

1. Serious mental or physical disability of the debtor or the debtor's dependants which prevents employment or advancement;
2. The debtor's obligations to care for dependants;
3. Lack of, or severely limited education;
4. Poor quality of education; (oversatuated market or school's incompetence, improper training, few graduates obtained jobs).
5. Lack of usable or marketable job skills;
6. Underemployment;
7. Maximized income potential in the chosen educational field, and no other more lucrative job skills;
8. Limited number of years remaining in work life to allow payment of the loan;
9. Age or other factors that prevent retraining or relocation as a means for payment of the loan;
10. Lack of assets, whether or not exempt, which could be used to pay the loan;
11. Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income;
12. Lack of better financial options elsewhere. 308 B.R. 447-47 (citations omitted).

The court cannot itself restructure the loans, and thus must therefore evaluate the debtor's future ability to make the loan

---

payments as currently scheduled. [24] The older a debtor is, the less number of years available to amortize the debts. [25] Whether the debtors expenses are likely to increase or decrease in the near future is also relevant to this inquiry. [26]

**Debtor's Concern of this court applying the Test #2.** This court has made findings in other cases simply holding that the debtor is intelligent and has a degree and has the world ahead of him! That is NOT the test. This court is expressly requested to look at what is Brittian's income likely to be based on the evidence in 5 years or 10 years. Then compare that to his interest alone which is accruing at $875.64 per month!

**This court must do that step:**

**What is Gross Monthly Income estimated expected:** _____

**What is Net Monthly Income expected:** _____

**What is Net monthly Living Expenses:** _____

**Net Monthly Minus Net Living Expenses:** _____

**Versus the following:**

**What is the Monthly Interest Rate on Student lOans: $875.64**

**What is Monthly Payment to Payoff in 20 years; $** _____

If there is no chance to payoff these debts over that time period , the court has the duty to so find and rule upon. Thus,

---

[24] Id at 693, see fn. 2 also noting that if Sallie Mae wanted to negotiate new payment schedules with debtor's in bankruptcy, it could do so but if it does not, then the court must evaluate the schedule that currently exists.

[25] In Re Hinkle, 200 B.R. at 694.

[26] In Re Rosen, 179 B.R. 935, 941 (Bkrptcy.D.Or. 1995).

express findings of fact are requested in the case to apply as neither party desires any remand from an upper court to determine at a later date.

**Application of Test #2:** First, as the **Nys** court analyzed, it is not merely the amount of income or whether it is decent, it is whether the debtors can afford to payoff the debt in the foreseeable future. 308 B.R. at 440. The debtors financial difficulties are expected to continue. Even in five years, Brittians income is expected to increase per month gross of only $433.33 a month, or $5,200 a year. That would equal net per month of far less as a result of taxes, possibly $260 per month.

Thus, this court can easily hold that the debtors lack the ability to pay for these debts for many years and a substantial period of the loan repayment period. Brittian has no present marketable skills to increase his pay to allow payment of the student loan debts. There are no assets to pay the student loan back. There is no evidence that the debtors will have additional income to pay the student loan debts owed to these defendants which total $1,163.23 a month presently and the interest alone totals $875.64 a month! Thus their financial situation will not improve. 10 years of the loan repayment program period is a substantial portion and thus part 2 of Test #2 is satisfied and fulfilled.

**Test #3: "Good Faith"**

Test #3: This test is reviewed by looking at whether the debtor has had income to make the payments, was injured preventing

income, had health problems, or made any headway on the loans. [27] This inquiry looks to whether the debtor made a good faith effort to repay the loans, as measured by his or her efforts to obtain employment, maximize income and minimize expenses; in addition, this inquiry looks to whether the debtor's financial misfortune is self imposed through the debtor's negligence or irresponsibility in conducting the debtor's financial affairs. [28] The bankruptcy court is also guided by the principal that the "fact that a debtor has made no payments on a loan is not enough to find that good faith is absent". [29]

Was the debtor negligent or irresponsible in his efforts to minimize expenses, maximize resources, or secure employment?

The "Good Faith Test" poses the question of whether the debtor is "actively minimizing current household living expenses and maximizing personal and professional resources". [30] The debtor "must be currently making a strenuous effort to maximize personal income, within the practical limitations of the debtor's vocational profile". [31] The debtor's hardship must not be due to circumstances which are self-imposed. [32] The good faith test is based on the

---

[27] In Re Hinkle, 200 B.R. at 694.

[28] In Re Rosen, 179 B.R. 935, 941 (Bkrptcy.D.Or. 1995).

[29] **In re Biranne**, 287 B.R. at 499.

[30] In Re Frech, 62 B.R. 235, 241 (Bankr.D.Minn.1986).

[31] Id.

[32] Perkins v. Vermont Student Assistance Corp., 11 B.R. 160, 161 (Bankr.D.Vt.1980).

Bankruptcy Code policy of affording a fresh start to an honest debtor. [33] Instead of going into default, credence must be given to Debtors efforts with respect to obtaining forebearances and deferments.

It is not the length of time between the loans and filing a bankruptcy that determines the good faith test. For example, in In Re Balm, 333 B.R.443, 445 (Bkrtcy.N.D.Iowa 2005) the debtor obtained loans between 1985 and 2003, consolidated them in January 9, 2004, and filed bankruptcy 47 days later. That 42 year old discharged her $30,000 in student loans.

**Application of Test #3:** The debtor previously did pay on the other student loan debts to the other discharged defendants paying over $4,000 on said loans previously and had moneys to pay at a time when the debtor earned more monies as a result of contract work.

The William D Ford program payments are not affordable as the payments cannot be complied with. The options which the defendant may attempt to introduce under the William D Ford program are not feasible as the monthly payments are not affordable.

None of the four options is reasonable as the debt would never disappear since even the interest cannot be paid. As a result, the actual debt would forever increase as a result of the accruing interest. Thus, negative amortization will occur if a small amount of monies is paid. If a borrowers debts are not fully repaid, then the unpaid amount including interest is then treated as taxable

---

[33] In Re Plotkin, 164 B.R. 623, 624.

income to the borrower which may result if a large amount of nondischargeable tax debt. [34] And the ICP debtor who pays little or nothing under the ICP will carry the ever increasing debt for the better part of his life, eliminating or severely curtailing the debtor's ability to incur credit in an increasingly credit driven economy. [35]

**No alternative plan exists offered by Defendant:** There is no plan known of that has been offered by the Defendants.

Although cases differ on what is undue hardship, each case must be determined in light of the facts peculiar to that case and thus citing the many cases of undue hardship does not assist this court in determining the instant case and thus are not stated except as to when the law is relevant as cited herein. It is not known why these student loan creditors lend out so much monies to borrowers knowing how much those debts total! But at some point, they have to say enough is enough. For now, the recourse of a borrower is undue hardship when the amount of debt can never be paid!

**Consolidation loans, Ford Loans, etc. Not Helpful and Create Non-dischargeable tax debts from a dischargeable student loan debt.**

The courts are also realizing that one of the significant problems with such consolidation loans such as the Ford loans, is

---

[34] "The debtor's decision not to participate in a loan repayment program was also reasonable, give the debtor's inability to meet the payments and the <u>prospect of a large associated tax bill.</u>"**In Re Adler,** 2003 WL 22439856 (Bkrptcy.N.D.Cal).

[35] Id.

that the extent to which the debt is forgiven **is taxable, resulting in tax liability without income from which to pay it!** [36] The William D Ford  program admits in its own repayment book that .."**You will, however, have to pay taxes on the amount that is discharged"..** describing what happens in the ICP plan when all monies are not paid back in full. ECMC admits this in their prior admissions in another case and now deny claiming, in bad faith it is submitted, that that calls for a legal conclusion. Compare Ex. 9 and 10, question #10 therein.  That is false; your honor, and any person entering their website or reading the exhibit 8 will see that the program fails to take into consideration child support, payment of medical insurance, union dues, other student loan payments, vehicle payments, etc. are simply not taken into consideration. Thus, the same result for 2 persons despite one having such expenses or part and the other not! The debtor will testify further on this at trial.

With respect to the Income Contingent Plan of the William D Ford program, that loan option fails to consider whether or not the plaintiff has to pay (1) child support, (2) pay for medical and/or dental insurance as opposed to employer paid insurance, (3) insurance premiums taken out of a debtor's paycheck as opposed to being provided by the employer, (4) for union dues or not, (5), pay for any monies for dependants medical insurance or daycare. [37]

---

[36] In Re Sequeira, 278 B.R.861,863, fn. 2(Bkrpcy.D.Or 2001).

[37] "Generally, refusal to participate in the ICRP is not conclusive proof of lack of good faith. ......a debtor whose situation is hopeless, such that he will never be able to make

Other courts have also focused on what the real issue is: Section 523(a)(8) **"focuses on the burden of the debt itself, and not on the burden of a particular repayment schedule".** [38]

With respect to the attempt to join a program to pay the debts over time, the program requires a payment of monies when in fact the debtor's have no such monies! The defendant herein has not provided any other source or way to resolve this matter whatsoever short of trial.

The debtor's lack of available income prohibits any ability to fund this consolidation loan. [39]

Debtors cannot maintain minimum standard of living if forced to repay student loans which exceed the minimum amount even offered to Plaintiff.

The analysis above under Part 1 of the test is relevant to being able to comply with a repayment program.

Good faith has been met; the only options left open to the debtor cannot be complied with as they simply do not have the money to pay! To quit paying means a lawsuit and garnishment of 25% to 50% of their income if the debts are not discharged.

---

any payments on his student loans, should not be forced into a repayment program that will burden his creditworthiness for 25 years and result in an income tax liability upon cancellation of the debt". IN Re Boykin,312, B.R.915, 921 (Bkrtcy. M.D.Ga 2004) (Debtors debt cancelled in full even though no payments ever made on the student loans).

[38] In Re Long, 271 B.R. 322, 332 (8th Cir. BAP 2002) criticizing ECMC. The court in fact noted that the debt would in all probability continue to grow and that ECMC's attempt to require payment schedule over 25 years was unrealistic.

[39] In Re Pena, 155 F.3rd at 1114 (9th Cir. 1998).

**CONCLUSION**

In this case, there is no doubt that this debtor will never be able to payoff the loans owed these defendants. While the defendants desire this court to focus on trying to live, he cannot afford to pay in full on these debts.

The student loans are presently accruing interest of $875.64 monthly; monthly payments of $1,163.23 . To pay such debt let alone the interest is an undue hardship. To hold otherwise would be an unwarranted infringement upon the debtor's entitlement to a fresh start. The court needs to keep this debtor a functioning person in our society and allow the him to remain helping and counselling our children. If not, the defendant could start garnishing 50% of his wages if not discharged as this Plaintiff have no other option.

The defendants do NOT want this court to compare net monthly income for each debtor with the monthly expenses as they exist at the time of trial. Why? The reasonable and necessary expenses leave no monies available to pay student loans. They do not address the fact that the state mandated income is low and the expenses including child support high.

The court is requested to find all the loans discharged against these remaining two defendants ECMC and TERI.

Even if the finds the three part test met, the court does have its inherent equitable power to then impose a partial discharge.

RESPECTFULLY SUBMITTED THIS 13th DAY OF APRIL, 2006.

/S/Richard D Granvold
RICHARD D. GRANVOLD
ATTORNEY FOR DEBTOR/PLAINTIFF
WSBA #16903