Honorable Judge Samuel J. Steiner
Chapter 7
Trial Date: April 18, 2006

Michaelanne Ehrenberg, WSBA #25615
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98101-3028
(206) 223-1313
Attorneys for Educational Credit Management Corporation

UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT
OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>DONALD WESLEY BRITTIAN,<br><br>    Debtor. | Case No. 05-23328-SJS |
| DONALD WESLEY BRITTIAN,<br><br>    Plaintiff,<br><br>    v.<br><br>AES/PHEAA; AFSA; CHARTER ONE BANK; FMC-OMAHA SERVICE CENTER; GREAT LAKES EDUC. SERV.; HOME STUDY IN'L; KEY BANK; NELNET; UNIPAC; WELLS FARGO EDUC. SERV.; MICHIGAN GUARANTY AGENCY; and EDUCATIONAL CREDIT MANAGEMENT CORPORATION, as a substituted party,<br><br>    Defendants. | Ad. Pro. No. 05-01398-SJS<br><br>ECMC'S TRIAL BRIEF |

Defendant EDUCATIONAL CREDIT MANAGEMENT CORPORATION, a Minnesota private, non-profit corporation ("ECMC"), submits the following trial brief in the above-captioned proceeding.

ECMC'S TRIAL BRIEF - 1
#578042 v1 / 32859-168

## I. INTRODUCTION

Plaintiff Donald Wesley Brittian ("Brittian") seeks to discharge his Federal Family Education Loan Program ("FFELP") Consolidation Student Loans ("Loans") due to a claim of undue hardship under 11 U.S.C. § 523(a)(8). However, as the undisputed and stipulated facts of this case will clearly demonstrate, Plaintiff cannot sustain his burden of proof under 11 U.S.C. § 523(a)(8) – for the simple reason that he fails to meet all three prongs of the long-established Brunner test for undue hardship.

## II. FACTUAL SUMMARY[1]

### A. Brittian's Story is An Even Less Compelling Sequel to the Carnduff Trial.

The Court has heard Donald W. Brittian's story already – it is basically the same story told by Brett and Janeth Carnduff in their student discharge trial held before the Court on January 31, 2006. Unfortunately for Brittian, his story is an even less compelling sequel. Brittian is 41 years old, healthy, single, with an 18-year old daughter who lives with her mother. He admittedly has no medical condition that impacts his ability to find work. He lives alone in a 3 bedroom, 2 ½ bath rental house in Kent, and owns two cars[2]. His hobbies include working out and on-line gambling. He has every intention of making more money in his field of study. He currently works as a School Psychologist for the Auburn School District, earning approximately $4,000 gross per month. The story is actually rather boring indeed. In short, there is nothing particularly special about Brittian's circumstances that would warrant a discharge of his student loans. And yet, he seeks this tremendous relief from the Court. His request must be denied in full.

---

[1] All facts contained within the factual summary are taken from Exhibit #20, stipulated into evidence by the parties.
[2] Brittian owns two cars, one of which is being used by Brett Carnduff.

ECMC'S TRIAL BRIEF - 2
#578042 v1 / 32859-168

*Law Offices*
**KARR TUTTLE CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

The student loan debt held by ECMC was acquired by Donald W. Brittian while he was a student at Southern Adventist University August 1984 through May 1985, and then Andrews University in Berrien Springs, Michigan during the approximate years of September 1985 through June 1986, and then Sept 1995 through December 2002. While a student, studying along side his good friend Brett Carnduff, Brittian agreed to co-sign on two of Carnduff's student loans after knowing Carnduff for only one year. The reason why is unclear; what is clear is that Brittian made a poor decision to further indebt himself for his new friend despite incurring hundreds of thousands of dollars of his own debt. Sadly, this pattern didn't stop at school.[3] Interestingly, Brittian formally graduated from Andrews University in December of 2005 and yet filed for bankruptcy months earlier in September 2005. The ink didn't even dry on his degree before he turned around and sought a complete return on his government funded education.

Brittian's work history demonstrates his vast income potential and yet he tries to claim he is virtually unemployed. While still attending Andrews, Brittian obtained an internship with Joint Educational Services in Special Education located in Plymouth, Indiana from August 2001 to August 2003, where he earned a reported gross salary of $2,800 per month. From there he obtained his first professional job as a School Psychologist for the Kent School District in Washington State, through a private placement agency called Cumberland Therapy Services, where his gross salary jumped to $5,753.60 per month for the school year August 2004 through June 2005. When that contract expired he obtained his current position as a School Psychologist with the Auburn School District, earning a gross salary of $3,986.84 per month. If this all

---

[3] Brittian also agreed to co-sign on a car loan for Carnduff in 2004 for a 2004 Honda Civic. The car is still in Brittian's name and under Brittian's insurance policy – despite the fact that Carnduff drives the car daily. And the two started a business together, which only seems to be to the benefit of Carnduff. This is not the financially healthiest of friendships.

*Law Offices*
K ARR T UTTLE C AMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

sounds hauntingly familiar, the Court will recall that Brett Carnduff took nearly this exact career path from Andrews University. ECMC is not sure who followed who to Washington State, but the end result turned out to be the same: both men filed for a complete discharge of their loans within months of each other.

B.  **Brittian's Improper Conduct Prior to Filing Bankruptcy.**

As ECMC will demonstrate at trial, two months prior to filing for bankruptcy, Brittian purposefully transferred tens of thousands of dollars of cash out of his banking account in order to avoid a hold on his assets. This included a check dated July 26, 2005 in the amount of $14,000 paid to his landlord David Litowitz, prepaying 10 months on his existing rent of $1,400 per month on his 3 bedroom, 2 ½ bath rental house. It included a second check, also dated July 26, 2005, in an amount of $5,000 paid to himself. In one day, he transferred $19,000 out of his checking account – an account that averaged over $20,000 in cash for the preceding 8 months. Interestingly, on July 26, 2005, Brittian was collecting unemployment checks from the State of Washington, despite having accepted an offer for his current job with the Auburn School District – and he knew full well that he intended to file for bankruptcy. These willful acts were done to mislead the Court and creditors that he held no assets at the point when he filed for bankruptcy. Brittian will claim that he had to pre-pay his rent because he needed a place to live. What he is really saying is that he was entitled to live in a $1,400 per month, 3-4 bedroom, 2 ½ bath rental mansion all by himself at the expense of the American tax-payers. There are families of four who don't live in such luxury – but the Court is supposed to buy Brittian's story of almost being homeless. A simple internet search on rents in Kent will reveal that a one bedroom, one bath apartment, with gym facilities, costs around $500-$700 per month.

ECMC'S TRIAL BRIEF - 4
#578042 v1 / 32859-168

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

C.   **Brittian's Payment History is Non-Existent.**

Once the ECMC loan balance became due, it was given a first payment due date of January 14, 2005. This loan was on a 30-year repayment plan,[4] with a monthly payment of $719.81. Brittian then went into an in-school deferment of loan payments from January 5, 2005 with an ending date expected to be April 28, 2006. He filed for bankruptcy on September 28, 2005. Yet, Brittian earned his Ed.S. in School Psychology in December, 2005. He made no more than two payments on the loans, totaling a meager $555.98 – on a loan balance of over $150,000.

His payment history couldn't be clearer – he had no intention of repaying his student loans. This is most easily illustrated by the fact that in 2004 he earned over $62,000 – and yet he was under a self-selected in-school deferment until April 2006 - despite the fact the he was working full-time in Washington State. When it came time to start paying on his loans in 2005, suddenly he couldn't afford to pay. Remarkably he didn't hide his tracks too well, because in June 2005 he had over $23,000 cash in his bank account and he knew it was time to start liquidating. The Court should reject any claim by Brittian that he is entitled to an undue hardship. His story is an insult to every deserving student loan recipient.

D.   **Brittian's True Income.**

According to Brittian's Schedule I, his current income is as follows:

| Gross monthly income: | $3,986.84 |
|---|---|
| Payroll taxes and social security | - $749.13 |
| Med-Flex | - $106.44 |
| Union dues | - $70.25 |
| Child support | - $102.36 |
| Retirement accounts[5] | - $199.66 |

---

[4] Brittian may try and confuse the facts at trial by claiming that he owed a higher amount on his loans under a 10-year repayment plan – but Brittian himself consolidated his loans into a 30-year repayment plan.

[5] Brittian claims this is mandatory

ECMC'S TRIAL BRIEF - 5
#578042 v1 / 32859-168

*Law Offices*
**KARR TUTTLE CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

| Subtotal of deductions | - $1,227.84 |
|---|---|
| Total net monthly take home pay | $2,759.00 |

Brittian has admitted that he has every intention on increasing his income and will earn more each additional year in the field. He has plans to possibly return to the Kent School District, where he will earn more money – up to at least $500 more per month. And he is still working with Cumberland Therapy Services to find him a higher paid position. In addition, even if he stays with the Auburn School District, his salary will increase next school year. He has only put in 3 full years of professional work as a school psychologist to date – and has 25-plus years of earnings ahead of him. It is anticipated that Brittian (like Carnduff) will argue that he expected to earn $60,000 a year upon graduation – but that salary number is wholly unsubstantiated. Brittian is not qualified to testify as a vocational rehabilitation expert and has not identified an expert for trial. In reality his income potential has only just started. It is disingenuous to argue that Brittian's income earning circumstances will not improve over time. Moreover, if a student loan debtor's anticipated career path and salary don't come to fruition, the debtor –and not the student loan creditor – bears the risk.

In any event, despite his purported net income – his current income will increase significantly in July 2006 when his child support payments end completely.[6] In fact, his true net income will be $2,867.63 and not $2,765.27. Contrary to an anticipated argument that he needs to pay for his daughter's college tuition, Brittian has already admitted that his first priority would be to repay his own student loans – the Court should hold him to his word.

---

[6] ECMC recently learned that his child support payment went down from $552.45 a month to $102.36 in February 2006.

ECMC'S TRIAL BRIEF - 6
#578042 v1 / 32859-168

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

E. **Brittian's Expenses.**

According to Brittian's most recent Schedule J, his current expenses are listed as follows.

| Expense | Monthly amount |
|---|---|
| Rent/mortgage[7] | 900.00 |
| Electricity & heating fuel | 75.00 |
| Water & Sewer | 70.00 |
| Garbage | 60.00 |
| Telephone | 50.00 |
| Cell Phone | 125.00 |
| Internet | 25.00 |
| Cable TV | 70.00 |
| Home Maintenance and Upkeep | 5.00 |
| Food | 350.00 |
| Clothing | 10.00 |
| Laundry/Dry Cleaning | 35.00 |
| Medical/Dental Expenses | 100.00 |
| Transportation (not including car payments, or insurance) | 227.00 |
| Recreation, clubs, newspapers etc | 25.00 |
| Charity | 0.00 |
| Homeowners/renters insurance | 0.00 |
| Life insurance | 0.00 |
| Health insurance | 0.00 |
| Auto insurance | 130.50 |
| Past due income taxes[8] | 250.00 |
| Car payment | 258.00 |
| Air fare to visit child | 65.00 |
| Alimony, child support, etc.[9] | 0.00 |
| Expenses from operating a business | 83.00 |
| Bankruptcy attorney fees | 100.00 |
| OTHER: Haircuts ($15), stamps ($3), Acctnt fees ($10), misc. personal ($40) | 68.00 |
|  | $3,081.50 |

---

[7] This amount isn't accurate: Brittian already pre-paid $1400 per month rent. The current amount is zero.

[8] He has presented no evidence of this amount – and cannot testify at trial to this amount absent calling an IRS agent to the stand.

*Law Offices*
**KARR TUTTLE CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

However, as noted above, the listed expenses are not accurate – in particular, Brittian is paying nothing in rent – due to his prior pre-payment and he hasn't secured another rental apartment at the rate noted in his Schedule J. Regardless, there are clear and certain reductions and discounts that can and should be achieved from his expenses. Brittian has made absolutely no attempt to tighten his belt on his expenses. He has made absolutely no personal sacrifices – allowing himself an extravagant lifestyle – including a 3 bedroom, 2 ½ bath rental mansion for himself, a very high food budget, a limitless transportation budget and an outrageous utility budget – as no utilities are even covered in his current excessive rental price. He can't even make a weak claim that he needs the room for his daughter to come visit, as he's already admitted that she only visited in once since he moved to Washington State. The standard here is "minimal standard of living" and not upper-middle class comforts. Not even his faithful friend Carnduff lives in such luxury and he has an ex-wife and two small children.

## III. ARGUMENT

**A.** **<u>Brittian Has Admitted His Obligations To Repay His Student Loans.</u>**

To meet its *only* evidentiary burden, ECMC must establish the existence of the debt and that the debt is owed to or insured or guaranteed by a governmental agency or nonprofit institution of higher learning. In re Raymond, 169 B.R. at 67, 69 (Bankr. W.D. Wash. 1994). Brittian has already admitted these facts. Once admitted, the burden firmly shifts to Brittian to prove undue hardship within the meaning of Section 523 (a)(8). Id.

ECMC'S TRIAL BRIEF - 8
#578042 v1 / 32859-168

*Law Offices*
**KARR TUTTLE CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

**B. Brittian's Loans Cannot Be Discharged Absent A Showing of Undue Hardship.**

Government-guaranteed student loans cannot be discharged in bankruptcy unless excepting the debt from discharge will impose an "undue hardship" on the debtor and the debtor's dependants. 11 U.S.C. § 523(a)(8).

**C. Brittian Must Meet All Three Prongs Of The Brunner Test.**

The law on this point is clear – and yet routinely mischaracterized and misused by debtors. The Ninth Circuit Court of Appeals prescribed the test for dischargeability under 11 U.S.C. § 523(a)(8) in United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108 (9th Cir. 1998), (adopting the three-part test from In re Brunner, 46 B.R. 752 (S.D.N.Y. 1985), aff'd, 831 F.2d 395 (2d Cir. 1987). Under Brunner, student loans are dischargeable only if:

> 1. The debtor cannot, based on current income and expenses, maintain a "minimal" standard of living for [herself or her] dependents if forced to repay the loans;
>
> 2. Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and
>
> 3. The debtor has made good faith efforts to repay the loans.

831 F.2d at 396. The debtor must prove each of the elements by a preponderance of the evidence. Raymond, supra at 70. If the debtor fails to meet his burden with respect to any of the prongs, the Court need not address the other prongs. United States Aid Funds, Inc. v. Nascimento (In re Nascimento), 241 B.R. 440, 445 (B.A.P. 9th Cir. 1999) ("the bankruptcy court's inquiry must end there, with a finding of no dischargeability").

ECMC'S TRIAL BRIEF - 9
#578042 v1 / 32859-168

### D. Brittian Cannot Prove All Three Prongs of the Brunner Test.

#### 1. Prong One – Brittian Can Maintain a Minimal Standard of Living and Still Repay His Student Loans.

The first Brunner prong requires that a debtor demonstrate that he cannot maintain, based on current income and expenses, a "minimal" standard of living if forced to repay the loans. This prong requires an examination of a debtor's current financial condition to see if payment of the loans would cause a debtor's current standard of living to fall below that minimally necessary. In re Shankwiler, 208 B.R. 701, 703 (Bankr. C.D. Cal. 1997), citing In re Faish, 72 F.3d 298, 305 (3d Cir. 1995), cert. den'd, 518 U.S. 1009 (1996), rehearing den'd, 518 U.S. 1047 (1996). "Minimal" does not mean pre-existing standard of living and it does not mean comfortable standard of living – it requires a pinch on one's lifestyle. See Educ. Credit Mgmt. Corp. v. Stanley (In Re Stanley), 300 BR 813, 817-18 (Bankr. N.D. Fla. 2003); see also Educ. Credit Mgmt. Corp. v. Howe (In Re Howe), 319 BR 886, 889-90 (B.A.P. 9th Cir. 2005) ("A minimal standard of living does not equate with a middle class standard of living").

Importantly, this test requires more than a showing of tight finances. In defining undue hardship, courts require more than temporary financial adversity. In re Nascimento, 241 B.R. at 445, citing Faish, 72 F.3d at 306. The Nascimento court held that a debtor's income and expenses are not unalterable and that courts are to determine whether it is "unconscionable" for a debtor to earn more income or reduce expenses. Nascimento, 241 B.R. at 445. See also In re Shankwiler, 208 B.R. at 705; In re Turretto, 255 B.R. 884, 889 (Bankr. N.D. Cal. 2000). It is not unconscionable for a court to require a debtor to engage in "belt-tightening" to reduce his or her expenses when doing so would allow for the payment of the student loan while maintaining a minimal standard of living (see Nascimento, at 445), nor it unconscionable for a court to require

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

a debtor to increase personal and professional resources when it is clear that the debtor is not attempting to maximize those resources. See In re Grigas, 252 B.R. 866, 875 (Bankr. D.N.H. 2000 ("[A] debtor does not have the luxury of remaining underemployed when saddled with debt that created the opportunity.")).

Thus, to satisfy the first prong of the Brunner test, a debtor must "demonstrate [s]he is actively minimizing current household living expenses and maximizing personal and professional resources." In re Healey, 161 B.R. 389, 394 (Bankr. E.D. Mich. 1993); See also In re Lehman, 226 B.R. 805, 808 (Bankr. D. Vt. 1998) ("[I]t does not suffice for the purpose of the first prong of the Brunner test that, currently, Debtor does not, by choice, have sufficient income to maintain a minimal standard of living and repay his debt. Voluntarily choosing a minimalist lifestyle does not satisfy the first Brunner prong."); In re Grigas, at 875; In re Stebbins-Hopf, 176 B.R. 784, 786 (W.D. Tex. 1994) ("[d]ebtor must...demonstrate that he is unable to earn sufficient income to maintain himself and to repay the educational debt"); In re Rappleye, 210 B.R. 336, 341 (Bankr. W.D. Mo. 1997).

In the present case, Brittian's income and expenses paint a picture of a man who is either incredibly deceitful or incredibly clueless as to his obligations under Brunner. Either way, he fails to meet this prong by any stretch of the imagination. Again, it is his burden to prove his expenses are "minimal" and NOT ECMC's burden to disprove that they are not, nor it is ECMC's burden to prove that the expenses are unreasonable. There is no burden shifting under Brunner – contrary to debtor's repeated attempts to do so. That being said, ECMC proposes the following reductions[10] to cut through his excesses and amount to a savings of at least $1,200 per

---

[10] The proposed reductions is not an exhaustive list – virtually every category contains fat that could be trimmed.

ECMC'S TRIAL BRIEF - 11
#578042 v1 / 32859-168

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

month. It is important to note, once again, that his current rent is actually 0, since it is pre-paid – what is he doing with the $1,400 per month that he isn't paying now?

| Expense | Monthly Amount | Reductions And Discounts |
|---|---|---|
| Rent/mortgage[11] | 900.00 | 500-800.00[12] |
| Electricity & heating fuel | 75.00 | 50.00 |
| Water & Sewer | 70.00 | 00.00 |
| Garbage | 60.00 | 00.00 |
| Telephone | 50.00 | 25.00 |
| Cell Phone | 125.00 | 50.00 |
| Internet | 25.00 | 10.00 |
| Cable TV | 70.00 | 0.00 |
| Home Maintenance and Upkeep | 5.00 | 5.00 |
| Food | 350.00 | 200.00 |
| Clothing | 10.00 | 10.00 |
| Laundry/Dry Cleaning | 35.00 | 35.00 |
| Medical/Dental Expenses | 100.00 | 50.00 |
| Transportation (not including car payments, or insurance) | 227.00 | 100.00 |
| Recreation, clubs, newspapers etc | 25.00 | 20.00 |
| Charity | 0.00 | 0.00 |
| Homeowners/renters insurance | 0.00 | 0.00 |
| Life insurance | 0.00 | 0.00 |
| Health insurance | 0.00 | 0.00 |
| Auto insurance | 130.50 | 100.00 |
| Past due income taxes | 250.00[13] | unknown |
| Car payment | 258.00 | 258.00 |
| Air fare to visit child | 65.00 | 40.00 |
| Alimony, child support, etc.[14] | 0.00 | 0.00 |
| Expenses from operating a business[15] | 83.00 | 0.00 |
| Bankruptcy attorney fees | 100.00 | 100.00 |

---

[11] This amount isn't accurate: Brittian pre-paid $1400 per month rent.

[12] His current rent is pre-paid through June or July 2006 – depending on his story. At the time of his deposition in March, he had not looked for another place to live since filing for bankruptcy. The rent also includes no utilities, another rental location could include coverage of all his utilities aside from heating and lights.

[13] Brittian has presented no substantive or admissible evidence to support his claim of a monthly tax bill of $250 per month. Testimony related to any such tax bill is inadmissible as hearsay unless supported by appropriate testimony. Brittian is unable to admit this evidence through his own testimony alone.

[15] Brittian started an LLC company with none other than Brett Carnduff – to date the business is producing no benefit for Brittian and thus he should not be allowed to throw more money down the Carnduff drain.

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

| | | |
|---|---|---|
| OTHER: Haircuts ($15), stamps ($3), Acctnt fees ($10), misc. personal ($40) | 68.00 | 25.00 |
| | $3,081.50 | $1,578-$1,878.00 |

These savings of at least $1,200 are on top of his other disposable income, leaving more than enough money at the end of the day for him to pay his student loans – without even getting to prongs two or three of the Brunner test.

### 2. Prong Two - There are no Additional Circumstances

Under the second Brunner prong, Brittian must prove that additional circumstances exist indicating that he cannot maintain a minimal standard of living for a significant portion of the repayment period if forced to repay the loans. It is not enough for a debtor to demonstrate that he is currently in financial straits, rather he must prove a total incapacity in the future to pay his debt. Mere "garden variety hardship" is insufficient as the undue hardship analysis is based upon a "certainty of hopelessness" not simply a present incapacity to fulfill a financial commitment. See Pena, 155 F.3d at 111, Roberson, 999 F.2d 1132, 1136 (7th Cir. 1993).

There is absolutely no basis for Brittian to argue that he meets this strict criteria. In fact, Brittian's standard of living is only going to improve if he gets to dump his student loans – that's the whole purpose behind his seeking discharge. And noted above, he is at the very beginning of his career as a school psychologist – his income will increase for every additional year of practice in his field. In July 2006, he is also getting back $102.36 each month once his child support obligation ends. That is a significant amount of money that could go directly to his student loan payments. Not to mention the fact the he may return to the Kent School District and make – by his own testimony - another $500 more per month. Finally, by taking advantage of federal student loans to fund his education, Brittian – not ECMC or the taxpayers – must bear the

ECMC'S TRIAL BRIEF - 13
#578042 v1 / 32859-168

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

risk even if his income remains stagnant. Roberson, 999 F.2d at 1137; O'Hearn v. Educ. Credit Mgmt., 339 F.3d 559, 565 (7th Cir. 2003); Oyler v. Educ. Credit Mgmt. Corp. 397 F.3d 382, 386 (6th Cir. 2005). The debtor doesn't and shouldn't be allowed to claim "oops, I guess I was wrong about what my expected salary would at graduation" and then automatically get their student loans discharged.

      a.    **The Requirement That Brittian Must Meet Under the Second Brunner Prong Is Extremely Demanding.**

The requirement of the debtor under the second Brunner prong "is a demanding requirement." In re Brightful, 267 F.3d 324, 328 (3d Cir. 2001). The requirement is intended to effect the clear congressional intent to make the discharge of student loans more difficult than that of other nonexcepted debt. Nascimento, 241 B.R. at 445. The standard for evaluating additional circumstances is whether they "indicate a total foreclosure" of opportunities creating "a total incapacity. . . in the future to pay [their] debts for reasons not within [their] control." Brightful, 267 F.3d at 331, quoting Brunner I, 46 B.R at 758. This requirement guarantees that the hardship is truly undue (Brunner II, 831 F.2d at 396) and that "dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment[s]." Brunner I, 46 B.R. at 755 (quoting In re Briscoe, 16 B.R. 128, 131 (Bankr. S.D.N.Y. 1981)); Brightful, 267 F.3d at 328; In re Roberson, 999 F.2d 1132, 1136 (7th Cir. 1993); see also In re Ballard, 60 B.R. 673, 675 (Bankr. W.D. Va. 1986) (explaining that "[a] finding of undue hardship is reserved for the exceptional case and requires the presence of unique or extraordinary circumstances which would render it unlikely that the debtor ever would be able to honor his obligations").

ECMC'S TRIAL BRIEF - 14
#578042 v1 / 32859-168

*Law Offices*
**KARR TUTTLE CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

### b. Brittian Cannot Demonstrate Any Additional Circumstances to Prevent Him From Having Higher Incomes in the Future.

Brittian is unable to show any "additional circumstances" that will prevent him from increasing his income over the course of the repayment period. Importantly, he admitted that he suffers from absolutely no medical condition that impacts his ability to work. Unsubstantiated allegations of medical conditions do not constitute an "additional circumstance" under Brunner. See e.g., Thompson v. New Mexico Student Loan Guar. Corp. (In re Thompson),329 B.R. 145, 188-193 (Bankr. E.D. Va. 2005) (unsubstantiated allegations of medical conditions do not constitute an additional circumstance); Pa. Higher Educ. Assistance Agency v. Tirch (In re Tirch), 409 F.3d 677, 681 (6th Cir. 2005) (hardship discharge not granted when the only evidence presented was the debtor's testimony that she was unable to work, which was "unsupported by competent medical ...evidence"); Pace v. Educ. Credit Mgmt. Corp. (In re Pace), 288 B.R. 788, 793 (Bankr. S.D. Ohio 2003) (court refused to discharge debtor's student loans because the debtor's claims were not" corroborated by testimony or even an affidavit of any physician or other medical professional, familiar with her condition," noting that "it is not possible to make a discharge determination without some corroboration of the medical conditions and how long they will persist").

The only thing preventing Brittian from repaying his student loans is his own poor decision making habits. ECMC strongly suggests he stop signing off on any loan put in front of him by Brett Carnduff. Regardless, unfortunately for him, voluntary choices do not constitute "additional circumstances" under Brenner. See Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler), 397 F.3d 382, 386 (6th Cir. 2005).

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

### 3. Prong Three – Brittian Has Not Made a Good Faith Effort to Repay His Student Loans.

The third prong of the Brunner test requires that Brittian demonstrate that he has made a good faith effort to repay on his student loans. This requires that either an actual effort be made to repay the loans, or a showing that the forces preventing repayment are truly beyond the plaintiff's reasonable control. In re Wegrzyniak, 241 B.R. 689, 692 (Bankr. D. ID 1999). Under the third prong, a debtor's efforts are measured by his efforts to obtain employment, maximize income and minimize expenses, and negotiate a repayment plan prior to seeking discharge. Id.; see also In re Birrane, 287 B.R. 490, 499 (B.A.P. 9th Cir. 2002) ("noting that good faith is also measured by the debtor's efforts to obtain employment and maximize income," and denying discharge where debtor failed to explore available consolidation option under ICRP)). Implicit in a determination of undue hardship is the notion that "the debtor may not willfully or negligently cause [her] own default...." Roberson, 999 F.2d at 1136.

### a. Brittian purposefully liquidated his cash in order to avoid paying on his loans under a bankruptcy discharge.

As noted above, Brittian's improper actions two months prior to his filing for bankruptcy clearly demonstrate bad faith. It is outrageous for Brittian to claim he is unable to re-pay any of his student loans. He had tens of thousands of dollars in cash in his bank account in June 2005. By August 2005 – with full knowledge that he was filing for bankruptcy, had a work contract with the Auburn School District, and while living on the State's Unemployment dole - Brittian got rid of his cash as if it were on fire. He can try and argue that he was in a panic to secure his housing – but it is truly ridiculous. He lived in his Kent mansion for one full year before he liquidated his cash – if he was concerned about housing, he had plenty of time to find a more affordable place to live. And even under his own ridiculous accounting of the facts, he would

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

still have at a minimum of $5,000 in the bank left over if he pre-paid his rent on a cheaper apartment. Kent is not Beverly Hills. And Brittian is not Aaron Spelling. He is a grown man who has benefited from and will continue to benefit greatly from his tax-payer funded education – and yet he is asking those same tax-payers to fund his self-selected denial.

        b.      **Brittian Has Willfully Ignored A Debt Consolidation Option Available to Him**.

Brittian is eligible to consolidate his student loans under the William D. Ford Direct Consolidation Loan Program. Direct Consolidation Loans provide debtors a wide assortment of repayment options and debt management tools. Under the "Income Contingent" repayment plan, the borrower's monthly repayment amount is based on the total amount of the borrower's loans, family size, and adjusted gross income. Under this option Brittian's monthly payment would be approximately $508.00, which is entirely affordable given his current and potential future income (and his duty to maximize it). This also would require Brittian to be more selective in his expenses, which he is obligated to do under Brunner.

Brittian may argue that, under the ICRP, he will likely not pay down his consolidated student loan entirely over the next 25 years and that he therefore will be subject to income tax liability when his outstanding loan balance is forgiven. However, under IRS Code § 108, discharged indebtedness only triggers tax liability to the extent such discharge renders a debtor solvent. See 26 USC § 108(a)(1)B), (3). That is, an otherwise insolvent debtor will realize taxable income from the cancellation of his or her student loan balance only if that cancellation causes him or her to have a positive net worth. If Brittian's net worth is rendered positive by the discharge of his student loan, then he should not have a problem paying tax on that deemed income. If his net worth is not rendered positive, he will not suffer any tax liability.

ECMC'S TRIAL BRIEF - 17
#578042 v1 / 32859-168

*Law Offices*
**KARR TUTTLE CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Additionally, the IRS has its own compromise and forgiveness authority, which it may exercise in forgiving tax debt where there is doubt as to collectibility. See 26 CFR § 301.7122-1. Moreover, whether any debt cancellation will result in taxable income is extremely speculative due to the length of the repayment period and the inability to predict changes in the tax code.

Several courts have analyzed this issue and concluded, for many of the reasons discussed above, that the supposed tax issue is a red herring. In In re Rose, 227 BR 518, 521 & 525-26 (W.D. Mo 1998), the court noted that the tax implications presented by the possible discharge of indebtedness can be ameliorated by the IRS's "authority to forgive tax debt through offers of compromise if there is doubt as to collectibility" under CFR 301.7122.1. In In re Archibald, 280 BR 222 (S.D. Ind 2002), the court rejected the debtor's "taxable income" argument by citing In re Rose and noting that the speculative nature of the tax implications coupled with the IRS's ability to forgive tax liability could not negate the benefits of the ICRP. In ECMC v. Stanley, 300 BR 813 (ND Fla. 2003), the court stated, "[I]t seems a stretch to assert that payment of student loans for 25 years under a federally approved program would create such tax liability, even under today's tax laws. Forecasting such a tax liability under whatever tax laws will be in effect in 25 years would be sheer speculation. Forecasting the effect any such liability would have on [debtor's] actual standard of living at that time would be even more speculative."

Brittian's denial of any real attempt to re-pay his student loans reflects a lack of good faith. Certainly Brittian's willingness to incur substantial student loan debt and then refusal to utilize his education and skills, in favor of sticking the debt to the American taxpayers, is not reflective of good faith.

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

## CONCLUSION

As set forth above, Plaintiff Donald W. Brittian fails all three of the Brunner test for undue hardship. ECMC therefore respectfully requests that the court find that Brittian's student loans are non-dischargeable.

DATED this 13th day of April, 2006.

                KARR TUTTLE CAMPBELL, P.S.

By: /s/ Michaelanne Ehrenberg
     Michaelanne Ehrenberg, WSBA #25615
     Attorneys for Educational Credit
     Management Corporation

ECMC'S TRIAL BRIEF - 19
#578042 v1 / 32859-168

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100